IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 6:06CR27 |
| | § | JUDGE DAVIS |
| SIMON RICARTE BALDERAS, JR., | § | |
| aka BJ (01) | § | |
| EFREM GONZALEZ GAMEZ (02) | § | |
| JOSE ZAVALA (03) | § | |
| RENE ZAVALA (04) | § | |
| SIMON BALDERAS, SR. (17) | § | |

Trial: October 30, 2006
9:00 A.M.

**TRIAL BRIEF**

1.    **Trial Evidence**

In late 2004, an investigation began into the methamphetamine distribution of Simon

Balderas, Jr. in Tyler.  During the investigation culminating in the arrest of defendants in or

around March 8, 2006, numerous undercover drug purchases were made, several drug seizures

occurred, and guns were purchased.  Confidential informants wore concealed microphones and

video cameras during undercover purchases.  Law enforcement monitored the conversations and

events as they took place and were party non-participants in the conversations.  Ultimately,

numerous search warrants were executed at the time of the arrests resulting in the seizure of

guns, drugs, cash and other assets.  Defendant Gamez was arrested on March 11, 2006 attempting

to flee to Mexico and at the time possessed methamphetamine, cash and a gun.

During the course of the investigation, Balderas, Jr. claimed his allegiance to the

"Nortenos" street gang.  Photographs and other material seized during the arrests and searches

confirms some of the defendants' association with this gang.

The trial evidence will consist of the testimony of officers and agents regarding their monitoring of statements by defendants as well as surveillance and chain of custody regarding seizures and undercover purchases. Some confidential informants will testify and several coconspirator defendants will testify.

The government will prove that Defendant Efrem Gamez was a provider of large quantities of methamphetamine to his co-defendants. Also, the co-defendants received methamphetamine from sources in Dallas. Defendants distributed methamphetamine as well as ecstacy. Methamphetamine was distributed in Tyler, Texas, Shreveport, Louisiana and Miami, Florida. Simon Balderas, Sr. aided his son, Balderas, Jr., in the conspiracy by maintaining residences to operate from, holding firearms which were used to trade and sell during the conspiracy and picking up and delivering drug proceeds for his son. Rene and Jose Zavala traveled to Dallas and obtained methamphetamine and distributed methamphetamine and firearms with Balderas, Jr.

2. **Stipulations**

The government will propose to Defendants a stipulation regarding the chemist's testimony relating to analysis. Should defense counsel agree, this would reduce the number of government witnesses.

3. **Exhibit List/Witness List**

An exhibit list identifying pre-marked exhibits will be provided prior to trial. A witness list will be provided at least three days prior to trial. All government exhibits will be made available for inspection at least three days before trial.

4. **Indictment**

    a)    <u>Count 1 - Title 21, United States Code § 846, conspiracy to possess with intent to distribute more than 10 kilograms of methamphetamine</u>.

As with any charge, the government's proof of dates need not be exact, but may include proof of any date within reasonable limits before the return of the indictment. <u>United States v. Pope</u>,132 F.3d 684, 688 (5th Cir. 1998); <u>Russell v. United States</u>, 429 F.2d 237, 238 (5th Cir. 1970); <u>United States v. Grapp</u>, 653 F.2d 189 (5th Cir. 1981). In addition to the acts and statements which occurred during this time period, the government may also introduce evidence of acts outside the time frame alleged in the indictment to show the development or concealment of the conspiracy, or aid in an understanding of the conspirators' relationship, actions, and conversations. <u>United States v. Millisci</u>, 465 F.2d 700 (5th Cir. 1974).

Because the objectives of this conspiracy were narcotics violations, it is not necessary that the government prove that any overt act was undertaken. The agreement standing alone is sufficient for a conviction. <u>United States v. Gaytan</u>, 74 F.3d 545, 552 (5th Cir. 1996); <u>United States v. Khan</u>, 728 F.2d 676 (5th Cir. 1984); <u>United States v. Natel</u>, 812 F.2d 937 (5th Cir. 1987); <u>United States v. Vergara,</u> 687 F.2d 57 (5th Cir. 1982).

The elements which must be proved in order to obtain a conviction on this count are:

    i)    that two or more persons made an agreement regarding possession with intent to distribute,

    ii)    that the Defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose, and

    iii)    that the quantity involved an amount as alleged or, by special verdict, a lesser or greater amount.

There is no requirement that the government prove that a Defendant knew the scope of the conspiracy, every other member of the conspiracy, or all the details of the agreement. Indeed in this case the government may offer proof that some of the Defendants attempted to insulate themselves by associating with only one or a limited number of the other conspirators. This type of proof is sufficient to meet the elements listed above. United States v. Garcia, 917 F.2d 1370 (5th Cir. 1990); United States v. Vergara, 687 F.2d 57, 61 (5th Cir. 1982).

As in any conspiracy case, the out-of-court statements of a Defendant are admissible because they are excluded from the definition of hearsay in Federal Rule of Evidence 801. Rule 801(d)(2)(E). Likewise, the statements of a Defendant's agent are admissible under the same principal. Out-of- court statements of any member of that conspiracy are admissible not only against the declarant, but also against every other member of the conspiracy because they are, in effect, agents of one another. United States v. James, 510 F.2d 546, 549 (5th Cir. 1975).

During the course of the trial, these statements may be offered and admitted against the declarant, but before instructing the jury that they may be considered substantively against any other Defendants in a joint trial, the court must make three findings: 1) that a conspiracy existed; 2) that the declarant and the Defendant on trial were members of the conspiracy; and 3) that the statement was made during the course of and in furtherance of the conspiracy. United States v. James, 510 F.2d at 582. It is not necessary that these findings be made at a separate hearing **or prior to admission of the statements.** United States v. Winship 724, F.2d 1116 (5th Cir. 1984). Rather, the statements may be admitted in the normal course of the trial **subject to later proof of the conspiracy**. Winship, 724 F.2d 1116. The statements themselves may be used to support the necessary findings. Bourjaily v. United States, 483 U.S. 171 (1987).

Statements "in furtherance of the conspiracy" can take any form, but it is generally held that the phrase must not be applied too strictly or the purpose would be defeated. James, 510 F.2d at 549. Statements such as boasts and puffing United States v. Miller, 799 F.2d 985 (5th Cir. 1986); attempts at concealment and avoiding detection United States v. Howard, 770 F.2d 57 (6th Cir. 1985); identification of conspirator role United States v. Magee, 821 F.2d 234 (5th Cir. 1987)) have been held to be in furtherance of the conspiracy.

Conspirator statements are admissible even if the conspirator making the statement is now a prosecution witness. Such status has no effect on whether the statement was in furtherance of the conspiracy at the time it was made.

b) Counts 2-8, 10, 12, 15, 18, 20 and 25-26 - Title 21, United States Code § 841(a)(1) possession with intent to distribute methamphetamine.

Title 21, United States Code, Section 841(a)(1) prohibits, among other things, knowingly or intentionally possessing with intent to distribute or the knowing or intentional distribution of a controlled substance.

The elements of this offense as to possession with intent to distribute and distribution are:

a) that the Defendant knowingly possessed a controlled substance;

b) that the substance was in fact that alleged in the indictment,

c) that the Defendant possessed the substance with the intent to distribute it and/or distributed it; that is sold it or gave it to someone or aided and abetted another, and

d) that the quantity alleged is accurate or a lesser or greater amount is found by the jury.

Possession, of course, may be actual or constructive and sole or joint. United States v. Rodriguqz, 15 F.3d 408, 411 (5th Cir. 1994); United States v. Vergara, 687 F.2d 57, 61 (5th Cir.

1982).  In this case the government will offer proof of all four types of possession.  Distribution, according to the definition contained in the Fifth Circuit Pattern Jury Instruction, is to deliver or transfer possession of a controlled substance to another person, with or without a financial interest in the transaction.  Under that definition, both the transferee and the transferor distribute, and a distribution occurs whether or not any payment is made, promised, or expected.  A distribution occurs even when the transfer is between co-conspirators.

   c)   Counts 9, 11, 13, 14, 17 and 19 - Title 18, United States Code §
        924(c) Use, Carrying and Possession of a Firearm in Furtherance of
        and in Relation to a Drug Trafficking Crime.

Counts 9, 11, 13, 14, 17 and 19 charge violations of Title 18, United States Code, Section 924(c) alleging that defendant intentionally used, carried and possessed firearms from on or about late 2004 to early 2006, during and in relation to and in furtherance of a drug trafficking crime.  In order to prove the violations alleged in these counts, the government must prove that the defendant committed the crimes alleged in Counts 1-8, 10, 12, 15, 18, 20 and 25-26 and that the defendant knowingly used, carried or possessed the firearm during and in relation to the crimes charged in Counts 1-8, 10, 12, 15, 18, 20 and 25-26 .

Title 18, United States Code, Section 924(c) was amended effective November 13, 1998 to respond to the Supreme Court's decision in Bailey v.  United States, 516 U.S. 137 (1995) sometimes referred to as the "Bailey Fix Act".  According to the legislative history contained in the Report of the House Judiciary Committee, H.R. Rep.  No.  105-344 (1997), the word "possession" was added and has a broader meaning than either "uses" or "carries" thus reversing the restrictive effect of the Bailey decision.  The amendments were also designed to embrace not only instances of brandishing, firing or displaying a firearm during a crime of violence or drug

trafficking crime but also situations where a defendant keeps a firearm available to provide security for the transaction, its fruits or proceeds, or to embolden the defendant by its presence in the commission of the crime. 144 Cong. Rec. S 12, 671 (dailey ed. October 16, 1998); United States v. Ceballos-Torres, 218 F.3d 409, 413-14 (5th Cir. 2000) Use, carrying or possession "in furtherance" requires that the firearm somehow further, advance or help forward the crime. In the context of a drug trafficking crime, the mere presence of a firearm could advance the crime by providing security to the defendant in an inherently dangerous business. Id. The Ceballos-Torres case is very similar to the facts in this case. Ceballos-Torres was found guilty of possessing a firearm in furtherance of a drug trafficking crime where he possessed the firearm in his apartment along with a substantial amount of drugs and money.

Possession of a gun in a vehicle used during the commission of a drug offense will generally satisfy the "carry" prong even if the weapon is in the trunk of the vehicle. United States v. Muscarello, 118 S.Ct. 1911 (1998); United States v. Brown, 161 F.3d 256 (5th Cir. 1998)

Pre Bailey cases are now relevant to amended § 924(c). The simplest cases involve firearms in the actual possession of the defendant. Firearms are often concealed on the person, such as in boots, pant legs, belts, pockets, waistbands, or holsters. Alternatively, a firearm may be hand-carried in an attache case or purse, or be within the defendant's immediate reach, such as between his legs, or near to him on a car seat. United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir. 1985); United States v. Garcia, 530 F.2d 650, 653 (5th Cir. 1976). United States v. Pietri, 683 F.2d 877, 880 (5th Cir. 1982). United States v. Rodriguez, 498 F.2d 302 (5th Cir. 1974). United States v. Rouco, 765 F.2d 983 (11th Cir. 1985), cert. denied, 475 U.S. 1124 (1986); United States v. Gironda, 758 F.2d 1201 (7th Cir. 1985), Spiess v. United States, 474

U.S. 1004 (1985); United States v. Rojas, 502 F.2d 1042, 1044 (5th Cir. 1974), United States v. Wilson, 553 F.2d 896 (5th Cir. 1977).

The courts will hold a defendant liable under section 924(c) who has a firearm "close at hand" and can still avail himself of the protection of the gun at the transaction site, even though the firearm is located 30 feet away. This is based on the rationale that the firearm provides him with the security and confidence to undertake the drug transaction. United States v. Rosado, 866 F.2d 967, 970 (7th Cir.1989).

Possessing a firearm can constitute the requisite use in connection with a drug trafficking crime under section 924(c) as previously discussed. The narcotics and the firearm need not be together in the same physical location. Courts have frequently held that drug traffickers who possess firearms for security purposes, are using them within the meaning of 924(c) regardless of whether the weapons are ever referred to, displayed, pointed, or fired. This has come to be known as the "fortress theory." United States v. Robinson, 857 F.2d 1006, 1010 (5th Cir. 1988); United States v. Matra, 841 F.2d 837, 843 (8th Cir. 1988); United States v. Cardenas, 864 F.2d 1528, 1533 (10th Cir.1989), United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.1989).

The case of United States v. Phillips, 922 F.2d 249 (5th Cir. 1991), dealt with the sufficiency of evidence required to convict pursuant to 924(c)(1). The court recognized that a firearm in a person's house could facilitate the commission of a drug trafficking offense because the weapon could be used to protect the drugs. Thus the evidence was sufficient. The Court further added that the firearm could be used to ward off threats to the defendant's drug operation.

If a firearm is used or carried at any time, however short, during the course of a drug trafficking crime, then section 924(c) applies. The firearm need not be carried constantly

throughout the offense.  Drugs need not be present when the guns are found, as long as a connection between the drugs and the guns can be established..

The term "drug trafficking crime" encompasses any felony <u>punishable</u> under the Controlled Substances Act (21 U.S.C. §§ 801, <u>et seq.</u>), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951, <u>et. seq.</u>), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. § 1901, <u>et seq.</u>).  The narcotics offense may be prosecuted in state court and the section 924(c) charge may be prosecuted in Federal court.

    d)    <u>Counts 22-23 - Title 18, United States Code § 922(g)(1) Felon in possession of a firearm</u>.

Title 18, United States Code, Section 922(g)(1) provides that it shall be unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess, in or affecting commerce, any firearm or ammunition.  In order to prove the elements of the offense, the government must prove that:

    1.    the defendant knowingly possessed the firearm or ammunition;

    2.    the defendant, prior to possession of the firearm, was convicted of a felony; and

    3.    the defendant possessed the firearm in or affecting commerce.

<u>United States v.  Dancy</u>, 861 F.2d 77, 81, (5th Cir.  1988)  The government need only prove a minimal affect on commerce and it is sufficient to prove that the firearm possessed traveled at some time in interstate commerce.  <u>Scarborough v.  United States</u>, 431 U.S. 563 (1977); <u>United States v.  Thomas</u>, 810 F.2d 478, 480 (5th Cir.  1987)  Thus, evidence from a government agent that the particular firearm is not manufactured in the state where defendant possessed it has been held as sufficient to establish the government's burden.  <u>United States v.  Corey</u>, 207 F.3d 84,

88-91 (1st Cir. 2000); United States v. Washington, 17 F.3d 230, 233 (8th Cir. 1994); United States v. Buggs, 904 F.2d 1070, 1076-77 (7th Cir. 1990; United States v. Thomas, 810 F.2d at 480. The government intends to call a Special Agent with the Bureau of Alcohol, Tobacco and Firearms to prove the commerce nexus. The government is not required to produce the gun at trial or prove it was operable. The government need only prove the existence of the gun, its possession and that it was "designed" to fire a projectile. United States v. Buggs, 904 F.2d 1070, 1076 (7th Cir. 1990); United States v. Gregg, 803 F.2d 568, 571 (10th Cir. 1986)

The government will present evidence of the conviction to include a certified copy of the Judgement or Plea of Guilty. The government may not refuse a defendant's offer to stipulate and admit the felony without its description when the purpose of the evidence is solely to prove the element of prior conviction. Old Chief v. United States, 519 U.S. 172, 174 (1997)

A certified copy of the Judgement or Plea of Guilty is admissible under Rule 902(4) of the Federal Rules of Evidence. Rule 902(4) provides that a "copy of an official record or report . . . or of a document authorized by law to be recorded authorized by law to be recorded or filed in a public office is self-authenticating if certified by the legal custodian of the record." United States v. Dancy, 861 F.2d 77, 79 (5th Cir. 1988); United States v. Vidaure, 861 F.2d 1337, 1341 (5th Cir. 1988).

5. **Co-Conspirator Liability**

A count may charge that the offense was committed by one or more Defendants and the government may prove that it was committed during the course of and in furtherance of the alleged conspiracy. **Thus, even though a Defendant is not named as a principal actor in the substantive count, the Defendant nevertheless is criminally liable for the act and may be**

**convicted of the crimes.**  Criminal responsibility is based on the agency or partnership doctrine

explained in Pinkerton v. United States, 328 U.S. 640 (1946).

In Pinkerton, two brothers were charged with conspiracy to conceal alcohol on which no

tax had been paid and the related substantive offenses.  All of the overt acts and substantive

counts were committed by one brother while the other was in prison.  The Supreme Court upheld

the conviction of the incarcerated brother even on the substantive counts, based on an agency

principle.  The court summarized the evidence as follows:

> There is no evidence to show that Daniel participated directly in the commission
> of the substantive offenses on which his conviction has been sustained, although
> there was evidence to show that these substantive offenses were in fact committed
> by Walter in furtherance of the unlawful agreement or conspiracy existing
> between the brothers.

Pinkerton, 328 U.S. at 645.   Applying the law, the court concluded:

> ...so long as the partnership in crime continues, the partners act for each other in
> carrying it forward.  It is settled that 'an overt act of one partner may be the act of
> all without any new agreement specifically directed to that act.

Id. at 646-647.

This principle [the Pinkerton partnership liability doctrine] has been repeatedly applied by this

circuit in cases involving drug conspiracies and substantive drug violations.  United States v.

Michel, 588 F.2d 986, 999 (5th Cir. 1979).    Indeed, the appellate court has continued to do so

since that statement in Michel.  United States v. Garcia, 917 F.2d 1370, 1372 (5th Cir. 1990);

United States v. Lechuga, 888 F.2d 1472, 1478 (5th Cir. 1989); United States v. Besey, 816 F.2d

980, 997 (5th Cir. 1987).  Each of these cases require the showing of two circumstances before a

Defendant may be convicted of a substantive offense under this theory.  Once the conspiracy and

a particular Defendant's knowing participation in it has been established beyond a reasonable

doubt, the Defendant is deemed guilty of substantive acts committed in furtherance of the conspiracy by any of his criminal partners.  United States v. Acosta, 763 F.2d  671, 681 (5th Cir. 1985).

The Pinkerton vicarious-liability rationale is based upon an agreement or common purpose shared by co-conspirators; they are partners in crime, and the act of one in furtherance of the unlawful plan is the act of all.     Acosta, 763 F.2d at 681.  Judge Learned Hand wrote in Van Riper v. United States, 13 F.2d 961 (2nd Cir. 1926): "When men enter into an agreement for an unlawful end, they become *ad hoc* agents for one another, and have made a partnership in crime. What one does pursuant to their common purpose all do, and as declarations may be such acts, they are competent against all" Id. at 967.

## 6.  **Duplicates**

During this trial the government may offer documentary evidence.  It may be necessary in some instances to offer a duplicate rather than the original documents.  Federal Rule of Evidence 1003 states that a duplicate is admissible to the same extent as an original unless a genuine issue is raised as to its authenticity.

## 7.  **Expert Testimony**

The government may offer the testimony of a chemist regarding the identity of the controlled substance.  It is also well established that experienced narcotics agents may testify as to quantities of narcotics for use and distribution, prices and various methods used in the drug distribution business.  United States v. Brown, 776 F.2d 397 (2d Cir. 1985)(role of participants); United States v. Ginsburg, 758 F.2d 823 (2d Cir. 1985)(use of pagers); United States v. Kelly, 679 F.2d 135 (8th Cir. 1982)(quantities, prices, intent to distribute); Fed. R. Evid. 702.

8.  **Chain of Custody**

If laboratory examinations are relied on to establish the identity of a substance, any breaks in the chain of custody between the time the substance was obtained and the time it was analyzed go to the weight rather than the admissibility of the evidence.  It is only necessary to show that reasonable precautions were taken against risks of alteration or that it is unlikely the substance was altered before the substance was submitted to the lab.  It is not necessary to rule out every conceivable possibility that shows how the evidence underwent change.  United States v. De Leon, 768 F.2d 629 (5th Cir. 1985);  Ballou v. Henri Studios, 656 F.2d 1147 (5th Cir. 1981); United States v. Colatriano, 624 F.2d 686 (5th Cir. 1980).

9.  **Business Records**

The Custodian of Records may certify by affidavit the elements of the Business Records Exception to the hearsay rule established in Rule 803(6) of the Federal Rules of Evidence.  Rule 902(11) authorizes this procedure.  The government may offer exhibits which consist of telephone records, hotel records and other business records with attached custodian affidavits. These records are available to defense counsel for review and copying.  The government requests that any objection to the admission of these records be provided to the government well before trial.  Should there be objections which require the Court's ruling, the government requests that those objections be filed with sufficient time for the Court to address the issues before trial and for the government to assess the need to call witnesses for the admission of business records.

10.  **Extraneous Conduct**

Rule 404(b), Fed. R. Evid., provides that evidence of crimes, wrongs or acts other than those alleged in the indictment is clearly admissible to prove plan, motive, intent, preparation,

knowledge, identity, and absence of mistake or accident.  United States v. Beechum, 582 F.2d 898 (5th Cir. 1978), cert. denied, 440 U.S. 920 (1979).  Beechum sets forth the basic rule that such extraneous offenses must be relevant to an issue other than character and that they should have probative value outweighing the danger of unfair prejudice, confusion and delay when they are admitted.  It should be noted, however, that "unfair prejudice, within its context, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." (Notes of advisory committee on proposed rules).

The Government may elect to submit Rule 404(b) evidence after the defense has put on its case and clarified the issues, but evidence may also be offered during the Government's case-in-chief because intent and knowledge are automatically an issue once a Defendant pleads not guilty, unless he has affirmatively taken the issue out of the case with a claim such as entrapment.  United States v. Kaufman, 858 F.2d. 994, 1005 (5th Cir. 1988); United States v. Mergist, 738 F.2d 645, 649-50 (5th Cir. 1984); United States v. Simon, 842 F2d. 552, 553-55 (1st Cir. 1988)

Furthermore, Rule 404(b) evidence may also be offered during the Government's case-in-chief in any case where the defensive issue is obvious, raised on cross-examination or when it can be easily anticipated, such as where it is the Defendant's strategy to attack a cooperating witness.  United States v. Smith, 726 F.2d 183 (5th Cir. 1984).

When extraneous offense evidence is offered, the Government need not prove the facts beyond a reasonable doubt, nor need it prove all elements of the offense.  It is enough that the jury could reasonably conclude that the act was committed by a preponderance of the evidence. Huddleston v. United States, 485 U.S. 681 (1988).

Since Beechum, a trial court has been required to exercise a two-step test in determining the admissibility of extrinsic-act evidence.  First, it must determine that the extrinsic evidence is relevant to an issue other than the Defendant's character.  Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Fed. R. Evid. 403.  The Fifth Circuit has stated that "where it is evident that intent will be an issue at trial, we have held the admission of the extrinsic evidence as part of the Government's case-in-chief not to be grounds for reversal." Id. at 915.

The determination of relevance by the trial court does not require a preliminary finding by the court that the Government has proved the act by a preponderance of the evidence. Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 1501 (1988).  The Government is not required every time it intends to show some extrinsic-act evidence to alert the court, have the jury escorted out of the courtroom and make a showing of its evidence.

In Huddleston, the Supreme Court noted that a Defendant's legitimate concern in protection against unfair prejudice comes from four sources:  (1) the requirement of Fed. R. Evid. 404(b) that the evidence be offered for a proper purpose; (2) the relevancy required of Fed. R. Evid. 402 as enforced through Fed. R. Evid. 104(b); (3) the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar-acts evidence is substantially outweighed by its potential for unfair prejudice; and (4) Fed. R. Evid. 105, which provides that the trial court shall, upon request, instruct the jury that the similar-acts evidence is to be considered only for the proper purpose for which it was admitted. Id. at 1501-02.

If the proposed evidence is inseparable from the evidence of the charged offenses, it is accordingly unnecessary to consider their admissibility under Fed. R. Evid. 404(b).  United States

v. Price, 877 F.2d 334 (5th Cir. 1989).

11.    **Summary Charts**

The government may offer summary charts as substantive evidence under Federal Rule of Evidence 1006. Primarily these charts will summarize records acquired from various companies. Rule 1006 provides for admission of such charts as a means of conveniently and understandably presenting voluminous or complex records. Although the underlying documents need not be admitted during the trial, they must be admissible. United States v. Strissell, 920 F.2d 1162, 1164 (4th Cir. 1990).

The foundation for a summary chart such as this can be laid by any witness who participated in the chart's preparation and has made a comparison between it and the underlying documentation. If the underlying documentation would be properly taken into the jury room, the summary chart should likewise be allowed. They are admitted as substantive evidence and should be treated as any other. United States v. Osum, 943 F.2d 1394, 1405 (5th Cir.1991); United States v. Winn, 948 F.2d 145 (5th Cir. 1991).

12.    **Recorded Conversations**

During the course of this trial, the government will offer recordings of conversations between various defendants. These recordings generally fall into two categories: oral or telephone conversations recorded with the consent of one party.

There are no formalistic standards governing the admissibility of tapes. United States v. Hughes, 658 F.2d 317, 322 (5th Cir. 1981). The "paramount" inquiry is to insure the accuracy of the recording. United States v. Biggins, 551 F.2d 64, 66-67 (5th Cir. 1977). In Biggins, the court reviewed four indicators of accuracy:

1)  the competency of the equipment operator

2)  the fidelity of the equipment

3)  the absence of material deletions, additions or alterations in relevant portions

4)  identification of speakers

Id. at 66.  It is not required that each of these be fully satisfied, but they may each be considered by the trial judge.  Id. at 67; Hughes, 658 F.2d at 323.  In this case, the prosecution will offer testimony from the operator of the equipment, the custodian of the tapes, and a witness to the conversations, when possible.

As is common with recorders, some portions of the conversation may be inaudible or unintelligible.  This, however, does not render the recordings inadmissible.  Tape recordings which are partially inaudible are not inadmissible *per se* unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy.  This determination is left to the sound discretion of the trial judge.  United States v. Avila, 443 F.2d 792, 795 (5th Cir. 1971).

It is generally accepted practice upheld by the courts to offer a transcript as a jury aid along with the tape itself.  The transcript may be used to follow along as the recording is played in court or taken into the jury room.  United States v. Larson, 722 F.2d 139 (5th Cir. 1983); United States v. Onori, 535 F.2d 938 (5th Cir. 1976).

There were numerous recorded conversations.  One of those conversations were in Spanish.  A translator will prepare a transcript and will testify regarding the contents of the conversations.  The identities of those involved in the conversations will be established through other witnesses and by circumstantial evidence.

Discussions of drug transactions by the defendant are admissible as admissions under the

Federal Rules of Evidence, Rule 801(d)(2).  Coconspirator statements in furtherance of the conspiracy are admissible under the exception previously discussed herein.  Fed. R. Evid., Rule 801(d)(2)(E).  Agents, as a non-party participant in the conversations, may testify regarding the statements.  Additionally, the government may introduce some of the recordings.  Agents may authenticate the recordings through voice recognition pursuant to Fed. R. Evid., Rule 901(b)(s)(6).  United States v. Albert, 595 F.2d 283, 290 (5th Cir. 1979), United States v. Cerone, 830 F.2d 938, 949 (8th Cir. 1987).  Many taped conversations are lengthy and the Government intends to play only excerpts of the admitted tapes.

13.    **Criminal Forfeiture**

In the Notice of Intention to Seek Criminal Forfeiture Pursuant to 18 U.S.C. § 924(d) and 21 U.S.C. § 853 contained within the Indictment and amended by the Bill of Particulars in this case, the United States has placed defendant on notice that it is seeking to forfeit certain firearms and property.

Criminal forfeiture "is an in personam proceeding against a defendant in a criminal case and is imposed as a sanction against the defendant upon his conviction."  U.S. v. D.K.G. Appaloosas, Inc., 829 F.2d 532, 543 (5th Cir. 1987), cert. denied, One 1984 Lincoln Mark VII Two-Door v. United States, 485 U.S. 976, 108 S.Ct. 1270 (1988).

**A.  PROCEDURAL RULES**

The Federal Rules of Criminal Procedure (Fed. R. Crim. P.) govern the general process by which property is criminally forfeited to the United States.  Criminal forfeiture procedures are specifically addressed in Fed. R. Crim. P. 32.2(a) (which requires that notice of the proposed forfeiture be included in the indictment); Fed. R. Crim. P. 32.2(b)(1) (which states that the court

shall determine whether the government has established the requisite nexus between the property and the offense); Fed. R. Crim. P. 32.2(b)(2) (which requires the court, upon finding that the property is subject to forfeiture, to promptly enter a preliminary order of forfeiture without regard to any third party's interest in all or part of it); and Fed. R. Crim. P. 32.2(b)(3) (which authorizes the Attorney General to seize the subject property and commence proceedings that comply with any statutes governing third-party rights).

## B. <u>SUBSTANTIVE FORFEITURE STATUTES</u>

The substantive criminal forfeiture statutes relied upon by the United States is 21 U.S.C. § 853 and 18 U.S.C. § 924(d). 21 U.S.C. § 853 provides that:

> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
>
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation;

18 U.S.C. § 924(d)(1) provides that:

> Any firearm or ammunition involved in or used in any knowing violation of subsection (a)(4), (a)(6), (f), (g), (h), (i), (j), or (k) of section 922, or knowing importation or bringing into the United States or any possession thereof any firearm or ammunition in violation of section 922(l), or knowing violation of section 924, or willful violation of any other provision of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, or any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure and forfeiture, and

all provisions of the Internal Revenue Code of 1986 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter. *Provided*, That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of the law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

## C. CRIMINAL FORFEITURE PROCEEDINGS

### i) Jurisdiction

Criminal prosecutions that seek forfeiture, as well as those that do not, are properly brought in the district in which the predicate offense was committed. Fed. R. Crim. P. 18. Federal District Courts are expressly granted authority to enter appropriate orders in criminal forfeiture proceedings regardless of the location of the property involved. 21 U.S.C. § 853(l).

### ii) Indictment

As noted heretofore, Fed. R. Crim. P. 32.2(a) provides that "[a] court shall not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." The purpose of this provision is to put the defendant on notice that the United States is pursuing forfeiture as a remedy or penalty for his criminal conduct. United States v. Cauble, 706 F.2d 1322, 1347 (5th Cir. 1983), reh denied, 714 F.2d 137, cert. denied, 465 U.S. 1005, 104 S.Ct. 996 (1984).

The primary issue raised in connection with Fed. R. Crim. P. 32.2(a) is the degree

of particularity it requires in the indictment's forfeiture allegations. In general, a bare bones pleading that tracks the language of the applicable statute has been found sufficient to satisfy the rule, "so long as it puts the defendant on notice that the government seeks forfeiture and identifies the assets subject to forfeiture with sufficient specificity to permit the defendant to marshal evidence in their defense." Id. at 1347.

In the case at bar, the United States in its Notice of Intention to Seek Criminal Forfeiture in the Superseding Indictment has alleged with specificity the particular assets it seeks to forfeit.

### iii)    Burden of Proof

In order to prevail in a criminal forfeiture proceeding, the United States must prove:

(1)    that the defendant is guilty of the underlying felony offense; and

(2)    that the defendant's interest in the property covered in the indictment's forfeiture allegation is forfeitable.

The United States must prove beyond a reasonable doubt that a defendant committed the charged criminal offense. Patterson v. New York, 432 U.S. 197, 200-01, 97 S.Ct. 2319, 2321-22 (1977). As to criminal forfeiture, the United States bears the burden of establishing its case by a preponderance of the evidence. Libretti v. United States, 516 U.S. 29, 116 S. Ct. 356 (1995) (criminal forfeiture is part of the sentence; it is not a substantive element of the offense); United States v. Rogers, 102 F.3d 641 (1st Cir. 1996) (burden of proof in § 853 cases is preponderance of the evidence because criminal forfeiture is part of the sentence under Libretti); United States v. Patel, 131 F.3d 1195 (7th Cir. 1997) (burden of proof in § 853 cases is preponderance of the

evidence because criminal forfeiture is part of the sentence under <u>Libretti</u>); <u>United States v. Dicter</u>, 198 F.3d 1284, 1289 (11th Cir.1999)(burden of proof in § 853 cases is preponderance of the evidence because criminal forfeiture is part of the sentence under <u>Libretti</u>).

**iv)**     <u>**Post Verdict Hearing**</u>

Fed. R. Crim. P. 32.2(b)(4) provides as follows:

> (4) Upon a party's request in a case in which a jury returns a verdict of guilty, the jury shall determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

**v)**     <u>**Entry of Preliminary Order of Forfeiture**</u>

Fed. R. Crim. P. 32.2(b)(1) and (2) provides as follows:

> (1) As soon as practicable after entering a guilty verdict or accepting a plea of guilty or *nolo contendere* on any count in an indictment or information with regard to which criminal forfeiture is sought, the court shall determine what property is subject to forfeiture under the applicable statute. If forfeiture of specific property is sought, the court shall determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment against the defendant, the court shall determine the amount of money that the defendant will be ordered to pay. The court's determination may be based on evidence already in the record including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.

> (2) If the court finds that property is subject to forfeiture, it shall promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party's interest in all or part of it. Determining whether a third party has such an interest shall be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

**vi)**     <u>**Ancillary Proceedings on Third Party Interests**</u>

1.      Notice of Forfeiture Order

The ancillary process on third party interests is initiated, following the entry of a forfeiture order, by the United States' publication of notice of the order and its intent to dispose of the forfeited property.  21 U.S.C. § 853(n)(1).  Direct written notice to parties known to have alleged an interest in the property can serve as a substitute for published notice to those individuals.  21 U.S.C. § 853(n)(1).

2.      Petition for Ancillary Hearing

a.      Petitioner

Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within 30 days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.  21 U.S.C. § 853(n)(2).  Those who have a legal claim against the defendant, but not against the forfeited property itself, do not have standing under the explicit terms of the applicable statutes to enter the ancillary hearing as petitioners.

b.      Time Limitations

A petition for a hearing to adjudicate the validity of an alleged interest in the property must be filed within 30 days of the final publication of notice or the receipt of notice under paragraph (1), whichever is earlier.  21 U.S.C. § 853(n)(2).

c.      Contents of Petition

The petition shall be signed by the petitioner under penalty of perjury and shall set

forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.  21 U.S.C. § 853(n)(3).

      3.    <u>Hearing Procedures</u>

      a.    <u>Expedited Proceeding</u>

Title 21, United States Code, Section 853(n)(4) provides that, if practicable and consistent with the interests of justice, the ancillary hearing should be held within thirty days of the filing of a petition.

      b.    <u>Conduct of Hearing</u>

      1)    <u>Generally</u>

An ancillary hearing in the criminal forfeiture process is held before the court alone, without a jury.  21 U.S.C. § 853(n)(2).  The court may consolidate the hearing on the petition with a hearing on any other petition filed by a person other than the defendant under this subsection.  21 U.S.C. § 853(n)(4).

      2)    <u>Evidentiary Matters</u>

At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing.  The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing.  21 U.S.C. § 853(n)(5).  The court shall consider relevant portions of the record of the underlying criminal case which resulted in the order of forfeiture.  21 U.S.C. § 853(n)(5).

      3)    <u>Required Showing by Petitioner</u>

In order to be entitled to relief from the original order of forfeiture, the petitioner must demonstrate, by a preponderance of the evidence, 21 U.S.C. § 853(n)(6), that his claim falls into one of two categories. First, the petitioner will prevail if he proves he had a legal interest in the property that, at the time of the commission of the acts giving rise to forfeiture, was vested in him rather than in the defendant or was superior to the interest of the defendant. 21 U.S.C. § 853(n)(6)(A). Second, even if he acquired his legal interest after the underlying criminal violation, the petitioner will prevail if he demonstrates that he was a <u>bona fide</u> purchaser for value of the interest in the property and that he was reasonably without cause to believe the property was subject to forfeiture at the time he purchased his interest. 21 U.S.C. § 853(n)(6)(B).

4)      <u>Disposition of Ancillary Hearing Petitions</u>

After the hearing, the court is required to amend the original order of forfeiture in accordance with its determination of the merits of the claims presented by petitioner(s). 21 U.S.C. § 853(n)(6). When all petitions have been disposed of or if no petitions are filed in a timely manner, "the United States shall have clear title to the property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." 21 U.S.C. § 853(n)(7).

14.     **Designation of Case Agents**

Pursuant to Rule 615 of the Federal Rules of Evidence, the Government designates ATF Special Agent Brandon Chenault and DEA Task Force Officer Scott Bradley as case agents. Both individuals have detailed knowledge of the case and their presence is crucial to the presentation of the Government's case. The agents' testimony will not be overlapping. <u>United States v. Gonzalez</u>, 918 F.2d 1129, 1135-36. (5th Cir. 1990); <u>United States v. Robles-Pantoja</u>,

887 F.2d 1250, 1256-57 (5th Cir. 1989); <u>United States v. Alvarado</u> 647 F2d 537, 540-41 (5th Cir. 1981).

                    Respectfully submitted,
                    MATTHEW D. ORWIG
                    UNITED STATES ATTORNEY

                     */s/ Bill Baldwin*
                    Bill Baldwin
                    Assistant United States Attorney
                    110 N. College, Suite 700
                    Tyler, Texas  75702
                    (903) 590-1400
                    California Bar#115408

                    ATTORNEY FOR THE
                    UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

On this the 29th day of September, 2006, I, Bill Baldwin, Assistant United States Attorney for the Eastern District of Texas,  the attorney of record for the United States of America herein, do certify that a true and correct copy of the foregoing instrument was filed with the Clerk of the District Court using the CM/ECF system which sent notification of such filing to all counsel of record.

                     */s/ Bill Baldwin*
                    BILL BALDWIN